**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, in his capacity as Secretary of Health and Human Services<br><br>and<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendants | CA 06 260<br><br>C.A. NO. 06-____<br><br>**COMPLAINT** |

**PARTIES**

1. The Plaintiff, Rhode Island Hospital (Provider No. 41-0007) (the "Plaintiff") is a 719 bed, non-profit acute care hospital located in Providence, Rhode Island. Plaintiff is part of the Lifespan hospital network, a group of affiliated hospitals in Rhode Island. Plaintiff is a licensed hospital under Title 23, Chapter 17 of the Rhode Island General Laws. Plaintiff is also a "hospital" and a Medicare "provider of services" as those terms are defined in the Social Security Act ("SSA"). 42 U.S.C. § 1395x(e) and (u); 42 C.F.R. § 489.2(b)(1).

2. The Defendant, Department of Health and Human Services, is the Federal agency charged with, among other things, administering the Medicare program. The Defendant, Michael O. Leavitt, Secretary of Health and Human Services (the

"Secretary"), is the federal officer responsible for overseeing the administration of the Medicare Program. He delegates this responsibility to the Administrator of the Center for Medicare & Medicaid Services ("CMS").

**JURISDICTION AND VENUE**

3. This is a civil action brought to obtain an order vacating a decision of the Provider Reimbursement Review Board (the "Board" or the "PRRB") denying jurisdiction over an issue in the Plaintiff's individual appeal for fiscal year ("FY") 1999 and depriving Plaintiff of the right to add an issue to the individual appeal. The Board concluded that the Plaintiff could not pursue its claim that it was entitled to additional Medicare reimbursement under the disproportionate share adjustment for its treatment of Medicaid eligible patients.

4. This action arises under (i) the Declaratory Judgment Act, 28 U.S.C. § 2201, (ii) Title XVIII of the SSA, as amended, 42 U.S.C. § 1395 *et seq.*, which establishes the Medicare Program (the "Medicare Act"), and (iii) the Administrative Procedure Act, 5 U.S.C. §§ 551-59, 701-706 (the "APA").

5. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1395oo(f).

6. 42 U.S.C. § 1395oo(f) and 42 CFR 405.1877(f) provide for venue in this Court.

7. This Court has authority to grant the requested relief under (i) the Declaratory Judgment Act, 28 U.S.C. § 2201, (ii) the SSA, 42 U.S.C. § 1395oo(f), and (iii) the APA.

**BACKGROUND ON MEDICARE**

8. Medicare is the federal hospital and medical insurance program administered by CMS that provides health coverage to most persons over age 65 and to certain other eligible disabled persons and individuals with end stage renal disease. Medicare provides coverage to Medicare beneficiaries by making payments to Medicare participating providers on behalf of the beneficiaries.

9. Pursuant to 42 U.S.C. § 1359h, CMS contracts with regional carriers and fiscal intermediaries (generally insurance companies) who are responsible for reviewing claims and making payments to providers. The carriers oversee physician payments while the fiscal intermediaries oversee hospital payments. Blue Cross Blue Shield of Rhode Island (the "Intermediary") was the Plaintiff's fiscal intermediary in FY 1999. Subsequently, Arkansas Blue Cross Blue Shield became the Plaintiff's fiscal intermediary.

10. Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(1). Since 1983, under Part A, the Medicare program has paid most acute care hospitals for the operating costs of inpatient hospital services pursuant to a prospective payment system ("PPS"). 42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412. Under the Part A PPS, hospitals are reimbursed for inpatient hospital services on the basis of prospectively determined national and regional rates that are based on the patient's diagnosis at discharge. These diagnosis related group ("DRG") rates are intended to estimate the average costs of caring for patients with a particular diagnosis. *Id.*

**BACKGROUND ON THE DSH ADJUSTMENT**

11. Hospital payments for inpatient services are subject to certain payment adjustments that are intended to provide additional reimbursement in instances in which Medicare believes the PPS payments are insufficient. *Id.*

12. One of the PPS payment adjustments is the disproportionate share hospital ("DSH") adjustment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106. The DSH adjustment is designed to reimburse certain hospitals for the additional costs of serving a disproportionate number of low-income patients. *See* 42 U.S.C. § 1395ww(d)(5)(C)(i) (1983). Pursuant to the DSH adjustment, a hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106.

13. A hospital may qualify for a DSH adjustment in two ways, only one of which is relevant here. A hospital qualifies for a DSH adjustment based on its "disproportionate patient percentage" ("DSH patient percentage"). *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). The DSH patient percentage determines both a hospital's qualification as a DSH, as well as the amount of the DSH adjustment. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The DSH patient percentage is defined as the sum of two fractions. 42 U.S.C. § 1395ww(d)(5)(F)(vi). Only one of these fractions is relevant in this instance.

14. That fraction – the "Medicaid fraction" – is equal to:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX [the Medicaid program], but who were not entitled to benefits under Part A of this subchapter, and the

> denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Put another way, the Medicaid fraction is equal to:

The Number of Patient Days
for patients eligible for
Medicaid and not entitled to
Part A Medicare

*divided by*

Total Patient Days.

**MEDICARE COST REPORTING PROCESS**

15. To obtain Medicare payments, including DSH payments, from its fiscal intermediary, a hospital must file a cost report with the intermediary at the end of each FY that details the costs incurred by the hospital and apportions such costs to Medicare beneficiaries. After receiving a hospital's annual cost report, the intermediary performs an audit and issues a notice of program reimbursement ("NPR"). The NPR sets forth the intermediary's determination of the hospital's Medicare reimbursement for that FY based on guidelines published by CMS in the form of manuals, memoranda, and instructive letters. The intermediary also issues an audit adjustment report which sets forth adjustments, if any, to the cost report made during the audit.

16. Following its receipt of the intermediary's NPR and audit adjustment report, a hospital is entitled to appeal the adjustments to the PRRB pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835, if (i) the hospital is dissatisfied with the intermediary's final determination, (ii) the amount in controversy is over $10,000, and

(iii) the hospital requests a hearing within 180 days after notice of the intermediary's determination. 42 U.S.C. § 1395oo(a).

17. Appeals of adjustments that are common to providers, such as DSH adjustments, are typically separately adjudicated in group appeals. Group appeals are comprised of at least two providers and address a single reimbursement issue common to all members of the group. PRRB rules provide for the transfer of issues from individual appeals to group appeals.

**THE FACTS IN THIS CASE**

18. At issue in the underlying administrative appeal in this case is the Plaintiff's Part A Medicare reimbursement for FY 1999. In its FY 1999 appeal, Plaintiff appealed, among other things, the Intermediary's determination of the Plaintiff's Medicaid percentage used to determine its DSH adjustment. Plaintiff filed its initial hearing request to the PRRB on February 14, 2002.

19. The Plaintiff alleged in its February 14, 2002 hearing request and subsequent position papers to the PRRB that the Intermediary understated the numerator of the fraction used to compute the Medicaid percentage – the Medicaid eligible patient day count – by excluding certain Medicaid eligible days that it should have included, in violation of § 1886(d)(5)(F)(vi)(II) of the SSA. More specifically, Plaintiff alleged that the Intermediary improperly excluded from the numerator patient days for which the patient was eligible for medical assistance but for which Medicaid never actually paid. The Plaintiff argued that the Medicaid eligible days count (*i.e.*, the numerator of the Medicaid percentage fraction) should have included *all* patient days for which a patient was eligible for medical assistance, regardless of whether Medicaid actually paid the

hospital for the days. This issue is referred to hereinafter as the "Eligible Days" issue for convenience.

20. The Plaintiff's individual FY 1999 appeal was assigned PRRB Case No. 02-0763. The Board has not held a hearing in this appeal.

21. On June 27, 2002, the Plaintiff requested that the PRRB transfer the Plaintiff's "Eligible Days" issue for FY 1999 to a group appeal – the RI Hospitals 99 Days Included in DSH Calculation Group Appeal. This group appeal (PRRB Case No. 02-1868G) included two providers – the Plaintiff and The Miriam Hospital, another Lifespan acute care hospital.

22. On October 10, 2003, the PRRB dismissed the RI Hospitals 99 Days Included in DSH Calculation Group Appeal (PRRB Case No. 02-1868G) for failure to submit a position paper.

23. On January 10, 2006, the Plaintiff requested that the PRRB transfer the Eligible Days issue from the Plaintiff's individual case (PRRB Case No. 02-0763) to a new Lifespan group – Lifespan Hospitals FY 1999 Eligible Days Group Appeal. Two hospitals comprised this new group – the Plaintiff and The Miriam Hospital.

## THE INTERMEDIARY'S JURISDICTIONAL CHALLENGE AND BOARD DECISION

24. On February 14, 2006, the Intermediary submitted a jurisdictional challenge to the Plaintiff's January 10, 2006 request to transfer the Eligible Days issue to the Lifespan group appeal. The Intermediary stated that it "does not believe that this issue can be transferred because there is no issue to transfer." The Intermediary argued that the PRRB dismissed the Eligible Days issue when it dismissed the first group case (PRRB Case No. 02-1868G) for failure to submit a position paper.

25. On March 28, 2006, the PRRB ruled on the Intermediary's jurisdictional challenge. It concluded that the "dismissal [of the RI Hospitals 99 Days Included in DSH Calculation Group Appeal (PRRB Case No. 02-1868G)] disposed of the Medicaid eligible days issue," and that "[t]he providers [sic] cannot now rely on adding the same issue again to their individual appeals to get a second opportunity to join a group." The Board reiterated that "[t]he DSH Medicaid eligible days issue may not be added to the individual appeal, case number 02-0763."

26. On April 3, 2006, the Provider sent a letter to the Board in which it requested that the Board add the Eligible Days issue to its individual appeal.

27. The CMS Administrator has not reversed, affirmed, or modified the Board's decision.

28. The Plaintiff has exhausted its administrative remedies and now seeks relief from this Court in accordance with its rights under Section 1878(f) of the SSA. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

**COUNT I: DECLARATORY JUDGMENT**

29. Count I incorporates by reference Paragraphs 1 through 28.

30. The Plaintiff asserts that the Board erred in concluding that the Plaintiff cannot now add the Eligible Days issue to its individual appeal. 42 C.F.R. § 405.1841(a)(1) establishes that a provider may add an issue to an appeal at any time "[p]rior to the commencement of the hearing proceedings." The Board dismissed the first group appeal on procedural grounds; thus, it never addressed substantively the Eligible Days issue. Therefore, because the hearing has not yet been held in the individual appeal, the Plaintiff may add the Eligible Days issue.

31. An actual controversy exists regarding Plaintiff's right to add the Eligible Days issue.

32. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court should declare (i) that the decision of the Board is invalid and without legal effect and (ii) that the Plaintiff must be permitted to add the Eligible Days issue to its FY 1999 individual appeal at any time up to the hearing.

**COUNT II: VIOLATION OF ADMINISTRATIVE PROCEDURES ACT**

33. Count II incorporates by references Paragraphs 1 through 32.

34. 42 C.F.R. § 405.1841(a)(1) permits a party to add an issue to its individual appeal at any time prior to hearing. Accordingly, the Board's decision which prohibited the Plaintiff from adding the Eligible Days issue to the individual appeal was arbitrary, capricious, an abuse of discretion and otherwise contrary to law in violation of the Administrative Procedures Act. 5 U.S.C. § 706(2).

35. Pursuant to the Administrative Procedures Act, 5 U.S.C. § 551 et seq., the Court should vacate the Board's decision.

**REQUEST FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests:

a. That this Court vacate the Board's decision on the ground(s) that it is:

   i. Arbitrary, capricious, an abuse of discretion, and not in accordance with the law;

   ii. Without observance of procedure required by law;

   iii. Unsupported by substantial evidence in the record; and/or

   iv. Unwarranted by the facts.

b. That this Court issue a Declaratory Judgment that the decision of the Board is invalid and without legal effect and that the Plaintiff must be permitted to add the Eligible Days issue to its FY 1999 individual appeal at any time up to the hearing.

c. That this Court order the Defendants to pay to the Plaintiff reasonable attorney's fees and costs as required under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

d. That this Court grant to the Plaintiff such other relief in law and/or equity as the Court may deem just and proper.

DATED this 26 day of May, 2006.

RHODE ISLAND HOSPITAL

By its attorneys,

Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (FAX)



::ODMA\PCDOCS\BOSTON\582492\1