UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RHODE ISLAND HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, Secretary of the U.S. Department of Health and Human Services,<br><br>Defendant. | ) | C.A. No. 06-0260ML |

**DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

Defendant, the Secretary of Health and Human Services, submits this Reply To Plaintiff's Objection to Defendant's Motion for Protective Order ("Pl's. Obj."). For the reasons set forth below, each of plaintiff's arguments should be rejected, and defendant's Motion for a Protective Order should be granted.

Statement of Facts

Because plaintiff's memorandum presents a very incomplete discussion of the "Background" of this action, defendant submits the following factual statement to apprise the Court of the pertinent facts in this case:

(1) Plaintiff, Rhode Island Hospital, is a Medicare-certified hospital located in Providence, Rhode Island. Plaintiff is part of the "Lifespan hospital network" (First Amended Complaint, at ¶ 1). Miriam Hospital, located in Providence, is also a Lifespan hospital (A.R. 164).

(2) On August 22, 2001, plaintiff's intermediary, Blue Cross & Blue Shield of Rhode Island ("the Intermediary"), issued a notice of program reimbursement for plaintiff's cost year ending September 30, 1999 (FY 1999) (A.R. 125).

(3) On February 14, 2002, plaintiff requested a hearing before the Provider Reimbursement Review Board ("the Board") on the Intermediary's determination as to the total amount of Medicare payment due the hospital for FY 1999 (A.R. 51). In its hearing request, plaintiff asserted that the Intermediary had miscalculated the Medicaid percentage used to determine its disproportionate share hospital ("DSH") adjustment for FY 1999 (hereinafter "the Eligible Days Issue"). Plaintiff raised a similar claim regarding the Intermediary's calculation of the Medicare percentage used to determine its DSH adjustment (hereinafter "the SSI Percentage Issue") (A.R. 53).

(4) In a notice dated March 18, 2002, the Board acknowledged the receipt of plaintiff's hearing request, and assigned case number 02-0763 to the appeal. The Board further informed plaintiff that it would be required to submit its preliminary position paper in the appeal by July 1, 2002, and that, if the hospital failed to meet this deadline, the appeal would be dismissed (A.R. 119).

(5) On June 27, 2002, counsel for the Lifespan Corporation ("Lifespan") requested the Board to "open a group appeal" that would consist of plaintiff and Miriam Hospital, and that would be

designated as the "RI Hospitals 99 Days Included in DSH Calculation Group Appeal" (hereinafter "the Eligible Days Group Appeal"). Counsel further requested the Board to transfer the Eligible Days Issue from the hospitals' respective individual appeals to this new group appeal (A.R. 54-55). With his letter, counsel enclosed a letter from the "home office" (i.e., Lifespan) designating him as the group's representative (A.R. 54).

(6) On the same date - June 27, 2002, counsel for Lifespan requested the Board to open a second group appeal that would consist of plaintiff and Miriam Hospital, and that would be designated as the "RI Hospitals 99 SSI Percentage Group Appeal" (hereinafter the "SSI Percentage Group Appeal"). Counsel further requested the Board to transfer the SSI Percentage Issue from the hospitals' respective individual appeals to the new group appeal (A.R. 398-401).

(7) In notices dated July 5, 2002, the Board acknowledged receipt of the two group appeal requests. The Board assigned case number 02-1868G to the Eligible Days Group Appeal, and case number 02-1867G to the SSI Percentage Group Appeal. In each notice, the Board advised Lifespan's counsel that he would be obligated to notify the Board that the group was complete by July 1, 2003. The notices further stated that the hospitals would be required to submit their preliminary position paper in each appeal by September 1, 2003, and that, if the hospitals failed to meet this deadline, the appeal would be dismissed (A.R. 56).

(8) On July 24, 2002, Lifespan's counsel notified the Board that the two groups were complete.

(9) On December 30, 2002, plaintiff submitted a letter in its individual appeal (case number 02-0763), in which it requested the Board to transfer the SSI Percentage Issue from its individual appeal to a different group appeal, the Southwest Consulting Disproportionate Share Hospital SSI Group Appeal (hereinafter the "Southwest Consulting Group Appeal"), case number 00-3019G (A.R. 83-85).

(10) Lifespan's counsel did not submit a preliminary position paper in either the Eligible Days Group Appeal or the SSI Percentage Group Appeal. Accordingly, in separate rulings dated October 10, 2003, the Board dismissed each group appeal based on the hospitals' failure to submit a preliminary position paper in the appeal (A.R. 56, 395).[1]

(11) Plaintiff and Miriam Hospital did not appeal either group appeal dismissal to the Administrator of the Centers for Medicare and Medicaid Services ("CMS") or to this Court. Moreover, the hospitals did not notify the Board that it had

[1] Lifespan now states that they filed position papers in the individual appeals, suggesting that this satisfied their obligation to file position papers in the group appeals. The individual appeal contained eight separate issues. After the transfer of the issues to the group appeals, the individual appeals went forward to resolve the remaining issues in those cases. The Board should not be required to search its records of the cases in which Lifespan or Rhode Island Hospital were parties to see if any of the pleadings in other cases relate to these group appeals.

mistakenly presented its DSH arguments in the individual appeal and request the Board to reinstate either appeal.

(12) On January 10, 2006, more than two years after the dismissal of the Eligible Days Group Appeal, plaintiff submitted a letter in its individual appeal (case number 02-0763), in which it "request[ed] group appeal treatment" for the Eligible Days Issue. Plaintiff further requested the Board to "transfer" that issue from its individual appeal to a different group appeal, the Lifespan Hospitals FY 1999 Eligible Days Group appeal, case number 06-0512G (hereinafter "the Lifespan Group Appeal") (A.R. 59). Two hospitals were included in this group - plaintiff and Miriam Hospital (Plaintiff's First Amended Complaint, at ¶ 25).

(13) On February 14, 2006, the Intermediary asserted a jurisdictional challenge to the purported transfer of the Eligible Days Issue to the Lifespan Group Appeal. The Intermediary asserted that the Eligible Days Issue could not be transferred to the Lifespan Group Appeal, because the issue had previously been transferred to the Eligible Days Group Appeal, which was subsequently dismissed by the Board (A.R. 49-50). Plaintiff did not object or otherwise respond to the Intermediary's jurisdictional challenge (A.R. 47).

(14) On the same date - February 14, 2006, the Intermediary asserted a similar challenge with respect to the purported transfer of the SSI Percentage Issue to the Southwest Consulting Group Appeal (A.R. 393-394). Plaintiff did not object or

otherwise respond to the Intermediary's jurisdictional challenge (A.R. 2).

(15) On March 28, 2006, the Board ruled in favor of the Intermediary on its jurisdictional challenge with respect to the Eligible Days Issue. The Board reasoned that plaintiff and Miriam Hospital had "chose[n] to become part of a group to resolve the Medicaid eligible days issue but then failed to follow the Board's Instructions [regarding the filing of a preliminary position paper], which resulted [in the] dismissal of the group appeal". Ruling that the dismissal of the group appeal "disposed of the Medicaid eligible days issue", the Board determined that the two hospitals could not "now rely on adding the same issue again to their individual appeals to get a second opportunity to join a group" (A.R. 48).

(16) Plaintiff requested the Board to reconsider that decision on April 3, 2006 (A.R. 4, 12-14). The Board denied plaintiff's reconsideration request on June 14, 2006 (A.R. 5-6).

(17) On June 14, 2006, the Board issued a similar ruling with respect to the SSI Percentage Issue. The Board held that the two hospitals could not "now rely on adding the same issue again to their individual appeal[s] to get a second opportunity to join a group" (A.R. 2-3).

ARGUMENT

I. THE VALIDITY OF THE GROUP APPEAL DISMISSALS IS NOT AT ISSUE IN THIS CASE.

Plaintiff begins its memorandum by mischaracterizing the issues raised by this action. Plaintiff alleges that this action challenges the Board's decision "to dismiss two group appeals ... because of RIH's failure to file position papers in those group appeals" (Pl's. Obj. at 1). However, the validity of these dismissals is not at issue in this case. The Board dismissed the two group appeals on October 10, 2003 (A.R. 56, 395). Pursuant to 42 U.S.C. § 1395oo(f)(1), plaintiff had 60 days to appeal the dismissals to this Court.[2] However, plaintiff did not file its action in this Court until May 26, 2006, more than two-and-one half years later. By that date, any challenge to the validity of the dismissals would have been time barred. See Kidney Center of Hollywood v. Shalala, 63 F.Supp.2d 51 (D.C.D.C. 1999).

In any event, plaintiff's action does not assert a challenge to the validity of the group appeal dismissals. Plaintiff's First Amended Complaint does not allege that the October 10, 2003 dismissals were arbitrary and capricious. Rather, in its First Amended Complaint, plaintiff asserts only that "the Board erred in concluding [in its March 28, 2006 and June 14, 2006 rulings] that the Plaintiff cannot now challenge and/or add the Eligible

[2] Alternatively, plaintiff could have requested the Administrator of CMS to review the dismissals. Id.; 42 C.F.R. § 405.1875.

Days and SSI Percentage issues to its individual appeal" (Count I), and that the "Board's decisions which prohibited the Plaintiff from adding the SSI Percentage and Eligible Days issue to the individual appeal" were arbitrary and capricious (Count II). Consequently, while plaintiff's action challenges the dispositive effect given to the group appeal dismissals by the Board, it does not challenge the dismissals themselves.

II. EVEN IF IT IS ASSUMED THAT THE VALIDITY OF THE GROUP APPEAL DISMISSALS IS AT ISSUE IN THIS CASE, PLAINTIFF HAS NOT ESTABLISHED A BASIS OR NEED FOR DISCOVERY WITH RESPECT TO THOSE DISMISSALS.

Plaintiff's primary argument in support of its discovery request is that discovery is required to identify "the policy or practice that the PRRB relied upon when it dismissed RIH's group appeals" (Pl's. Obj. at 11). The Court should reject this argument for the simple reason that the information sought by plaintiff is publicly available. The Board has publicly released its "Provider Reimbursement Review Board Instructions" (hereinafter "Instructions") (Exhibit A) to advise Medicare providers of the procedures to be followed in their reimbursement appeals. These Instructions, which are available on the Board's website,[3] contain a number of provisions relating to the filing

[3] http://www.cms.hhs.gov/PRRBReview/02_PRRB_Instructions.asp

of position papers.[4] The Instructions require the representative of a group appeal to provide the intermediary, within fourteen months of the date of the request for a group hearing, with the group's preliminary position paper, and to provide the Board with a letter certifying that this requirement has been met and a copy of the first page of its position paper (Part I, page 11). The Instructions also alert providers that their failure to comply with these requirements will result in the dismissal of an appeal.

> The parties must meet all due dates, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. Due dates can only be changed or eliminated by written confirmation of the Board. Because you are the moving party, <u>if you do not meet a due date, the Board will dismiss your appeal.</u> The Board must have your position paper, even if it does not have the intermediary's position paper, as it is your burden to prove your case.

(Part I, page 16) (emphasis added). <u>See also</u> Instructions, Part II, page 5 ("[i]f you fail to meet the preliminary position paper due date and fail to supply the Board with the required documentation, the Board will dismiss your appeal for failure to follow Board procedure").[5]

---

[4] As soon as the Board receives a request for an individual or group appeal, it will issue an "Acknowledgment and Critical Due Dates" letter, which notifies the parties to the appeal of "all due dates", including the due date for the filing of a preliminary position paper (Part I, page 8). The record in this case indicates that the Board issued this letter in each of plaintiff's group appeals (A.R. 56, 395).

[5] While the Instructions state that the Board "disfavors requests for extensions of time to file position papers", either party to the appeal may, before the due date, file a written request for such an extension, if "extraordinary circumstances

Thus, there is no need for discovery in this case to identify the policies or practices relied upon by the Board in dismissing the group appeals. Those policies and practices are clearly reflected in the Board's written procedures, which are publicly available to all.[6]

Plaintiff also argues that the requested discovery should be allowed because it might show that the Board has permitted other "similar cases to proceed" to hearing, and that such a showing would establish that the group appeal dismissals were arbitrary and capricious (Pl's. Obj. at 9-10). There are two major problems with this argument.

First, plaintiff's argument is based entirely on speculation. As far as defendant can determine, there is no precedent allowing a litigant under the APA to pursue discovery to establish that the agency has issued conflicting decisions in other cases. However, even if such precedent existed, it could not be invoked based upon a mere <u>suggestion</u> of inconsistent decisionmaking. Rather, a strong showing of inconsistent decisionmaking would be required. <u>Cf.</u> <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 420 (1971); <u>Town of Norfolk</u>

---

warrant such a request" (Part II, at page 6).

[6] Plaintiff's suggestion that it needs to conduct discovery to learn "why the PRRB decided to dismiss RIH's group appeals" (Pl's. Obj. at 11-12) is spurious. The reason for the dismissals is hardly difficult to comprehend: the Board dismissed the group appeals based on the group's failure to file preliminary position papers (A.R. 56, 395).

v. U.S. Army Corps of Engineers, 968 F. 2d 1438, 1458-1459 (1st Cir. 1992) ("[c]ourts require a strong showing of bad faith or improper behavior before ordering the supplementation of the administrative record").

Like the provider in High Country Home Health, Inc. v. Thompson, 359 F.3d 1307 (10th Cir. 2004) ("High Country"), plaintiff in this case has failed to cite "a single decision in which the Board's policy [on the timely filing of position papers] was not applied to someone in a similar situation to its own".[7] Id., at 1315. Plaintiff has thus "failed to call into question the Board's evenhanded application of its own procedural rules". Id.

The second flaw in plaintiff's argument is that information on other appeals is not relevant to the determinations at issue in this case. Even if plaintiff establishes that the Board has allowed other providers who failed to meet due dates to continue litigating their claims, such evidence would not establish that the Board acted arbitrarily in this case. The Board's Instructions allow a provider that has had an appeal dismissed for failure to submit a position paper, or for some other

---

[7] The published case law on the subject certainly reflects that the Board has consistently applied this procedural rule. See High Country, 359 F.3d at 1315; UHI, Inc. v. Thompson, 250 F.3d 993, 996-997 (6th Cir. 2001); Inova Alexandria Hospital v. Shalala, 244 F.3d 342, 349-351 (4th Cir. 2001); Novacare, Inc. v. Thompson, 357 F.Supp.2d 268, 272 (D.C.D.C. 2005).

procedural reason, to request a reinstatement of its appeal, based on the existence of extenuating circumstances (Part I, page 15; Part II, page 6).[8] See also UHI, Inc. v. Thompson, 250 F.3d at 995 (noting reinstatement procedure). Obviously, the Board's review of a reinstatement request will be based on the circumstances presented in the request, which will vary from case to case. While other providers may have persuaded the Board to reinstate their dismissed appeals, plaintiff in this case did not even request reinstatement of its appeals, let alone present evidence that could be viewed as an extenuating circumstance. Rather, plaintiff simply elected not to respond to the dismissals.[9]

In short, compliance with plaintiff's document request would not only violate the general rule against discovery in APA cases, it would require the Board to expend substantial efforts

---

[8] To request a reinstatement, the provider must "explain in detail the reasons why [it] failed to comply" with the requirement, and provide the Board with "the document or information that [it] did not submit timely, causing [its] appeal to be dismissed" (id.).

[9] Plaintiff also failed to respond to the Intermediary's February 14, 2006 objections to the hospital's purported "transfer" of the DSH issues from its individual appeal to other group appeals (see A.R. 2, 47 ("[t]he Provider has not responded to the Intermediary's challenge")). Plaintiff did request the Board to reconsider its March 28, 2006 ruling on the Eligible Days Issue (A.R. at 4, 12). In its reconsideration request, plaintiff asserted that it "did not respond to the Intermediary's letter challenging jurisdiction because the parties were on the verge of settlement of all issues in the case, including the ... Days Included issue" (A.R. 13).

searching for and producing documents in factually-dissimilar cases that have no bearing on the issues raised by this case. Under these circumstances, the requested discovery is inappropriate and should be barred.

Plaintiff's claim that discovery should be allowed in this case because there were no evidentiary hearings in its appeals (Pl's. Obj. at 10) is also without merit. There were no hearings in the appeals only because plaintiff failed to comply with the Board's procedural requirements. Moreover, even though there were no hearings in plaintiff's appeals, there is an administrative record of the proceedings conducted by the Board in such appeals. The determinations challenged by plaintiff in this action can be reviewed based on this administrative record. There is no basis (or need) for obtaining information outside of this record.

As a factual matter, defendant disputes plaintiff's assertion that, prior to the dismissal of its group appeals, the hospital had transferred the issues raised in those appeals (i.e., the "DSH" issues) back to its individual appeal (Pl's. Obj. at 6). Plaintiff bases this contention on the position paper that it filed in its individual appeal. In this position paper, plaintiff discussed the DSH issues, and suggested that it might be more "convenient and expeditious" to have such issues resolved in its individual appeal. However, plaintiff never formally withdrew the DSH issues from the group appeals, or filed

any statement in such appeals requesting the Board to transfer such issues back to its individual appeal.[10] As the Tenth Circuit held in the High Country case, the Board is under "no duty to hunt around in the record" of the various appeals filed by a provider to determine the appropriate course of action in a particular appeal. Id., 359 F.3d at 1313.

In any event, plaintiff's argument is simply not relevant to the question of whether discovery is permissible or necessary in this case. The Court can determine the significance of the position paper that plaintiff filed in its individual appeal on the issues raised by this case without resorting to extra-record information. The fact that plaintiff filed a position paper in the individual appeal that discussed the DSH issues in no way establishes that there is a need for discovery in this case, or that this case falls within any recognized exception to the general rule on discovery in APA cases.

---

[10] Moreover, because plaintiff and Miriam Hospital are part of the Lifespan hospital network (A.R. 164), the two hospitals were required by the Secretary's regulations to litigate the DSH issues in group appeals. The hospitals did not have the discretion to litigate the issues in their own individual appeals. See 42 C.F.R. 405.1837(b) ("any appeal filed by providers that are under common ownership or control must be brought by the providers as a group appeal ... with respect to any matters involving an issue common to the providers ...").

CONCLUSION

For the foregoing reasons, and for the reasons discussed in defendant's prior memorandum, the Court should grant defendant's motion and enter a protective order barring plaintiff's discovery request.

Respectfully Submitted,

MICHAEL O. LEAVITT, Secretary of
Health and Human Services

By His Attorney,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Anthony C. DiGioia

ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney
Chief, Civil Division
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: anthony.digioia@usdoj.gov

Of Counsel:

DANIEL MERON
General Counsel

NANCY S. NEMON
Chief Counsel, Region I

CLIFFORD M. PIERCE
Assistant Regional Counsel
Department of Health and Human Services
J.F.K. Bldg., Rm. 2250
Boston, MA 02203
(617) 565-2379

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify on this 17th day of January, 2007, I caused the within Defendant's Reply to Plaintiff's Objection to Defendant's Motion for a Protective Order to be electronically filed with the United States District Court for the District of Rhode Island using the CM/ECF system. The following participant has received notice electronically:

Mitchell R. Edwards, Esq.
Robert G. Flanders, Esq.
Hinckley Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903

/s/ Anthony C. DiGioia
ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney
Chief, Civil Division
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: *anthony.digioia@usdoj.gov*