**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 06-260 ML |
| | ) | |
| MICHAEL O. LEAVITT, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Rhode Island Hospital, hereby submits its Motion for Summary Judgment. In support thereof, plaintiff relies upon its Memorandum of Law submitted herewith, the exhibits attached thereto and the administrative record.

Respectfully submitted,

RHODE ISLAND HOSPITAL

By its counsel,

/s/ *Robert G. Flanders, Jr.*
Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)
rflanders@haslaw.com
medwards@haslaw.com

Dated: April 2, 2007

**CERTIFICATION**

I hereby certify that on April 2, 2007 a copy of the foregoing Plaintiff's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Robert G. Flanders, Jr.

#792779-v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND HOSPITAL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. Action No. 06-260 ML |
| MICHAEL O. LEAVITT, *et al.*, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Rhode Island Hospital ("RIH"), has appealed to this Court from two decisions of the Provider Reimbursement Review Board ("PRRB" or "Board"). The Board is an administrative hearing arm of the U.S. Department of Health and Human Services ("HHS"). The Defendant Michael O. Leavitt is the Secretary of HHS (the "Secretary"). The decisions in question prevented RIH from pursuing two issues before the PRRB – referred to here as the Eligible Days Issue and the SSI Percentage Issue – because RIH supposedly failed to file two preliminary position papers in two separate group appeals. As a result of this alleged failure to comply with its rules, the PRRB dismissed two group appeals in which RIH had raised these issues: the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the RI Hospitals 99 SSI Percentage Group Appeal (PRRB Case No. 02-1867G). Prior to PRRB's dismissal of these two group appeals, however, RIH had transferred the Eligible Days Issue and the SSI Percentage Issue to RIH's fiscal year 1999 individual appeal ("Individual Appeal")

(PRRB Case No. 0763) and filed a final position paper with the PRRB in that case with respect to both issues, among others. Nevertheless, in the two decisions at issue here, the PRRB refused to permit a hearing to go forward on the Eligible Days Issue or the SSI Percentage Issue because RIH failed to file the preliminary position papers in the dismissed group appeals. The PRRB's decisions are arbitrary, capricious, an abuse of discretion, not in accordance with the law, and unsupported by substantial evidence in the record.

First, the PRRB ignored the record evidence that RIH transferred the Eligible Days Issue and the SSI Percentage Issue from the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the RI Hospitals 99 SSI Percentage Group Appeal (PRRB Case No. 02-1867G) to its Individual Appeal (PRRB Case No. 02-0763) on September 30, 2002, over a year before the PRRB dismissed the two group appeals. PRRB rules permit a provider to "add issues to the appeal prior to the commencement of the hearing," but [the PRRB] does not send written acknowledgement of the addition of issues to an existing appeal." PRRB Instructions, Part I, Section C. VI. Instead, the PRRB instructs providers that "[s]ince [the provider is] responsible for addressing all issues in a position paper before the hearing, [the provider] should assume that the added issues are part of [its] appeal." Id. Thus, as RIH expected, the PRRB did not contact RIH to let it know that the Eligible Days Issue and the SSI Percentage Issue were no longer part of the Individual Appeal as of September 30, 2002. Based on the PRRB's own rules, RIH had every reason to believe that these issues were part of its Individual Appeal as of September 30, 2002 and were no longer part of the group appeals.

Second, the PRRB ignored the evidence in the record that RIH filed its final position paper in the Individual Appeal on September 30, 2002. RIH addressed the Eligible Days Issue and the SSI Percentage Issue in that final position paper a little less than one year before the preliminary position paper was due in the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G). Therefore, there was no need or requirement for RIH to file a preliminary position paper in the two group appeals, much less any rational basis for the Board to foreclose RIH's ability to have a hearing on the Eligible Days Issue and the SSI Percentage Issue.

RIH has appealed the PRRB's decisions to this Court and respectfully requests that the Court (a) declare that the PRRB's decisions are invalid and without legal effect and (b) order that the defendants permit RIH to add the Eligible Days Issue to the Individual Appeal and the SSI Percentage Issue to either the Southwest Consulting DSH SSI Group Appeal (PRRB Case No. 00-3019G) or the Individual Appeal.

## I. STATEMENT OF FACTS

### A. STATUTORY AND REGULATORY FRAMEWORK

The Medicare program reimburses most acute care hospitals for the operating costs of inpatient hospital services pursuant to a prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d). Hospital payments for inpatient services are subject to certain payment adjustments that are intended to provide additional reimbursement in instances in which Medicare believes the PPS payments are insufficient. 42 U.S.C. § 1395ww(d)(5). One of the PPS payment adjustments is the disproportionate share hospital ("DSH") adjustment. The DSH adjustment is designed to reimburse qualifying

hospitals for the additional costs of serving a disproportionate number of low-income patients.

Whether a hospital qualifies for the DSH adjustment and the amount of the adjustment it receives depends on the hospital's "disproportionate patient percentage." 42 U.S.C. § 1395ww(d)(5)(F)(v). The most commonly used method for a hospital to qualify for the DSH payment adjustment follows a statutory formula under which payment is based on the level of the hospital's DSH patient percentage, *i.e.*, the sum of two fractions (expressed as a percentage): the "Medicare fraction" and the "Medicaid fraction." 42 C.F.R. § 412.106(b). The Medicare and Medicaid fractions are added together to determine if the hospital is entitled to receive DSH payments and, if so, the amount of such payments. *Id.*

To obtain DSH payments, a hospital must file a cost report with its fiscal intermediary (the "Intermediary") at the end of each fiscal year. See 42 C.F.R. § 413.20. The hospital's Intermediary performs an audit and issues a notice of program reimbursement ("NPR") and audit adjustment report which sets forth adjustments, if any, to the cost report made during the audit. See 42 C.F.R. § 405.1803. A hospital may appeal the adjustments to the PRRB. See 42 U.S.C. § 1395oo. The provider has a right to a hearing before the PRRB about any matter designated in § 405.1801(a)(1) [1] if:

> (1) An intermediary determination has been made with respect to the provider; and (2) The provider has filed a written request for a hearing before the Board under the provisions described in § 405.1841(a)(1); and

[1] Title 42 C.F.R. § 405.1801(a)(1) states: "With respect to a provider of services that has filed a cost report under §§ 413.20 and 413.24(f) of this chapter, [Intermediary determination] means a determination of the amount of total reimbursement due the provider, pursuant to § 405.1803 following the close of the provider's cost reporting period, for items and services furnished to beneficiaries for which reimbursement may be made on a reasonable cost basis under Medicare for the period covered by the cost report."

> (3) The amount in controversy (as determined in § 405.1839(a)) is $10,000 or more.

42 C.F.R. § 405.1835(a).[2]

Appeals may be adjudicated in an individual appeal or a group appeal. PRRB Instructions, Part I, Section B. I (c) and (d). Group appeals are comprised of at least two providers, which address a single reimbursement issue common to all members of the group. PRRB Instructions, Part I, Section B. I (d). An individual appeal involves a single hospital and must meet the amount in controversy. PRRB Instructions, Part I, Section B. I (c).

Under 42 C.F.R. § 405.1841(a)(1), a provider may add an issue to an appeal at any time "[p]rior to the commencement of the hearing proceedings." The PRRB instructions provide for the same. <u>See</u> PRRB Instructions, Part I, Section C. VI ("In an individual appeal, you may add issues to the appeal prior to the commencement of the hearing."). The PRRB instructions also permit the transfer of issues from an individual appeal to a group appeal. <u>Id</u>. The PRRB, however, "does not send written acknowledgement of the addition of issues to an existing appeal." <u>Id</u>. Instead, the PRRB instructs providers that "[s]ince [the provider is] responsible for addressing all issues in a position paper before the hearing, <u>[the provider] should assume that the added issues are part of [its] appeal</u>." <u>Id</u>. (Emphasis added.)

[2] Title 42 C.F.R. § 405.1841(a)(1) states: "The request for a Board hearing must be filed in writing with the Board within 180 days of the date the notice of the intermediary's determination was mailed to the provider or, where notice of the determination was not timely rendered, within 180 days after the expiration of the period specified in § 405.1835(c). Such request for Board hearing must identify the aspects of the determination with which the provider is dissatisfied, explain why the provider believes the determination is incorrect in such particulars, and be accompanied by any documenting evidence the provider considers necessary to support its position. Prior to the commencement of the hearing proceedings, the provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof."

## B. <u>PROCEDURAL HISTORY AND PRRB RULINGS</u>

On February 14, 2002, RIH filed an individual appeal with the PRRB from its Intermediary's determination of the Medicaid and Medicare percentage used to determine the hospital's DSH adjustment for fiscal year 1999. <u>See</u> Administrative Record ("AR") at 51-53, 121-392. RIH contends~~ed~~ that the Medicaid eligible days count should have included all patient days for which a patient was eligible for medical assistance, regardless of whether Medicaid actually paid the hospital for the days ("Eligible Days Issue"). <u>See</u> AR at ___. RIH also appealed the Intermediary's determination of the Medicare percentage, asserting that the Intermediary understated the percentage by using inaccurate and erroneous data to determine RIH's number of patient days eligible for Supplemental Security Income ("SSI Percentage Issue"). <u>See</u> AR at ____.

On March 18, 2002, the PRRB issued a notice in the Individual Appeal, setting deadlines for RIH's filing its preliminary position paper and its final position paper by July 1, 2002 and October 1, 2002 respectively. <u>See</u> AR at 119-120.

On June 27, 2002, RIH requested that (1) the PRRB transfer the Plaintiff's Eligible Days Issue for fiscal year 1999 from Case No. 02-0763 to a group appeal – the RI Hospital's 99 Days Included in DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and (2) the PRRB transfer the SSI Percentage Issue for fiscal year 1999 to a group appeal: namely, the RI Hospital's 99 SSI Percentage Group Appeal (PRRB Case No. 02-1867G). <u>See</u> AR at 54-55, 398-401. One day later, on June 28, 2002, RIH submitted a preliminary position paper in PRRB Case No. 02-0763 in a timely manner. <u>See</u> AR at 115-118.

On September 30, 2002, RIH submitted its final position paper in PRRB Case No. 02-0763 in a timely manner. See AR at ___. RIH stated that to facilitate settlement discussions with the Intermediary, RIH requested the transfer of the Eligible Days Issue back to the Individual Appeal (PRRB Case No. 02-0763) from the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the transfer of the SSI Percentage Issue back to the Individual Appeal (PRRB Case No. 02-0763) from the SSI Percentage Group Appeal (PRRB Case No. 02-1867G). See AR at ___. RIH had briefed the Eligible Days Issue and the SSI Percentage Issue in its final position paper on pages 3 through 8 and attached relevant exhibits. See AR at ___.

On December 20, 2002, RIH requested that the PRRB transfer the Plaintiff's "SSI Percentage" issue to the Southwest Consulting DSH SSI Group Appeal (PRRB Case No. 00-3019G) ("Southwest Group Appeal"). See AR at 85. RIH asked the PRRB, "[i]f any additional documentation or procedure is required to cause the transfer of this issue, please notify us immediately, as this request is intended to exercise the Provider's right to transfer the SSI DSH issue as fully as permitted by law and regulation." AR at 85. The PRRB did not respond to the December 20, 2002 request for transfer.

On January 15, 2003, counsel for Southwest Consulting requested that the PRRB transfer the Plaintiff's "SSI Percentage" issue for FY 1999 to the Southwest Consulting DSH SSI Group Appeal (PRRB Case No. 00-3019G). See AR at 83-84.

On October 10, 2003 – more than one year later – the PRRB dismissed the RI Hospitals 99 Days Included in DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G) for failure to

submit a position paper in those group appeals on or before September 1, 2003. See AR at 56 and 395

On January 10, 2006, RIH requested that the PRRB transfer the Eligible Days Issue from the Individual Appeal (PRRB Case No. 02-0763) to a new Lifespan group – Lifespan Hospitals FY 1999 Eligible Days Group Appeal (PRRB Case No. 06-0512G). See AR at 60-61. RIH requested this transfer to a new group appeal in an attempt to facilitate settlement of the other remaining issues in the Individual Appeal. RIH believed that the Intermediary wanted to proceed in this fashion. On February 14, 2006, however, the Intermediary submitted a jurisdictional challenge to the Plaintiff's January 10, 2006 request to transfer the Eligible Days issue from the Individual Appeal (PRRB Case No. 02-0763) to the Lifespan group appeal (PRRB Case No. 06-0512G). See AR at 49-50. On the same date, the Intermediary also challenged the transfer of the SSI Percentage Issue from the Individual Appeal to the Southwest Group Appeal (PRRB Case No. 00-3019G) over three years after RIH requested the transfer of the SSI Percentage Issue to the Southwest Group Appeal. See AR at 393-394.

On March 28, 2006, the PRRB ruled in favor of Intermediary on its jurisdictional challenge with respect to the Eligible Days Issue. See AR at 47-48. The PRRB stated

> This Provider chose to become part of a group to resolve the Medicaid eligible days issue but then the group failed to follow the Board's Instructions, which resulted in a dismissal of the group appeal. The dismissal disposed of the Medicaid eligible days issue. The providers cannot now rely on adding the same issue again to their individual appeals to get a second opportunity to join a group.

AR at 48. On April 3, 2006, RIH sent a letter to the Board asking it to reopen its decision of March 28, 2006. See AR at 12-14.[3]

On June 14, 2006, the PRRB denied the RIH's request regarding the Eligible Days Issue and ruled on the SSI Percentage Issue. See AR at 2-6. With respect to the SSI Percentage Issue, the PRRB stated:

> The Provider's request to transfer the DSH SSI issue from the individual appeal to case number 00-3019G should have been denied pursuant to the Board's Instructions since the Provider was already involved in a group appeal to resolve the DSH SSI issue for fiscal year ending September 30, 1999. Additionally, since case number 02-1867G was dismissed on October 10, 2003 for failure to follow the Board's Instructions, the DSH SSI issue may not be added into the individual appeal again.

AR at 2-3. The PRRB reiterated its statement from its March 28, 2006 decision regarding the Eligible Days Issue. See AR at 4-6.

Thus, the PRRB concluded that RIH's right to a hearing on the two issues was foreclosed even though (a) RIH transferred the Eligible Days Issue and the SSI Percentage Issue to the Individual Appeal almost a year before the deadline for filing a preliminary position paper in the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G), (b) RIH filed a final position paper in the Individual Appeal on the Eligible Days Issue and the SSI Percentage Issue almost a year before the deadline for filing a preliminary position paper in the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G), (c) RIH had never had a hearing on these issues and (d) RIH's Individual Appeal was open and capable of having new issues added to it. If upheld, this ruling amounts to an absolute forfeiture against RIH

[3] Under 42 C.F.R. § 405.1885(a) a determination "may" be reopened "with respect to findings on matters at issue in such determination" when the provider files a motion to reopen within three years of the determination.

and a complete sacrifice of its rights to a hearing – without any support in the underlying statute or regulation.

## II. ARGUMENT

### A. STANDARD OF REVIEW

RIH is entitled to judicial review under 42 U.S.C. § 1395oo(f). Under § 1395oo(f), judicial review is governed by the Administrative Procedures Act ("APA"), under which "courts reviewing final agency decisions must hold unlawful and set aside decisions found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Duckworth v. United States, No. 05-145S, 2006 WL 753081 at * 2 (D.R.I. May 22, 2006) (quoting 5 U.S.C. § 706(2)(A)); Visiting Nurse Assoc. Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 72 (1st Cir. 2006). "An agency's determination is arbitrary and capricious if the agency lacks a rational basis for making the determination or if the decision was not based on consideration of the relevant factors." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43 (1983); Associated Fisheries of Maine, Inc. v. Daly, 127 F.3d 104, 109 (1st Cir. 1997). "Under the 'arbitrary and capricious' standard, the court must determine whether the agency examined the pertinent evidence, considered the relevant factors, and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." Hadaja, Inc. v. Evans, 263 F.Supp.2d 346, 351 (D.R.I. 2003) (citing Penobscot Air Services, Ltd v. Federal Aviation Admin., 164 F.3d 713, 719 (1st Cir. 1999)).

"Substantial evidence means such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Steadman v. SEC, 450 U.S. 91, 99 (1981);

Smith v. Rhode Island State Services for Blind and Visually Handicapped, 581 F. Supp. 566 (D.R.I. 1984) ("[S]ubstantial evidence has been defined as 'more than a mere scintilla [--] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

"[A]gency determinations are presumed valid and courts must afford great deference to the administrative decision-making process." Northern Wind, Inc. v. Daley, 200 F.3d 13, 17 (1st Cir. 1999). "While this is a highly deferential standard of review, it is not a rubber stamp. The reviewing court must undertake a 'thorough, probing, in-depth review' and a 'searching and careful' inquiry into the record. Only by carefully reviewing the record and satisfying itself that the agency has made a rational decision can the court ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197, __ (1st Cir. 1999) (internal citations omitted); see also Griffin v. Reich, 956 F. Supp. 98, 104 (D.R.I. 1997) ("[T]he appellate process is not merely a meaningless ritual. As one circuit court stated: If the Department 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency' we would be compelled to find its decision arbitrary and capricious.'") (quoting Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d 847, 850 (D.C. Cir. 1993)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for

summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." **[cite needed]** The nonmoving party, however, cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted).

### B. THE PRRB'S DECISIONS TO PRECLUDE RIH FROM HAVING A HEARING ON THE ELIGIBLE DAYS ISSUE AND THE SSI PERCENTAGE ISSUE ARE ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, ARE NOT IN ACCORDANCE WITH THE LAW AND ARE UNSUPPORTED BY THE SUBSTANTIAL EVIDENCE IN THE RECORD.

The undisputed facts in the record demonstrate that RIH transferred the Eligible Days Issue and the SSI Percentage Issue to its Individual Appeal on September 30, 2002, over a year before the PRRB dismissed the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G) on October 10, 2003. See AR at ___. It is undisputed that the PRRB instructions permit a provider to "add issues to the appeal prior to the commencement of the hearing," but [the PRRB] does not send written acknowledgement of the addition of issues to an existing appeal." PRRB Instructions, Part I, Section C. VI. Instead, the PRRB instructs providers that "[s]ince [the provider is] responsible for addressing all issues in a position paper before the hearing, [the provider] should assume that the added issues are part of [its] appeal." Id.

The undisputed facts in the record also show that RIH filed its final position paper in the Individual Appeal on September 30, 2002. See AR at ___. RIH addressed the Eligible Days Issue and the SSI Percentage Issue in that final position paper a little less than one year before the preliminary position paper was due in the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G). See AR at ___.

In light of these undisputed facts, the PRRB's decisions are irrational and run counter to the evidence before the PRRB. RIH had every reason to rely upon the PRRB's instructions when it transferred the Eligible Days Issue and the SSI Percentage Issue back to the Individual Appeal. Neither the PRRB nor the Intermediary objected to the transfer of these issues back to the Individual Appeal. Furthermore, RIH had no reason to file a preliminary position paper in the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G) on or before September 1, 2003 when it had transferred the issues back to the Individual Appeal and filed a final position paper on those issues in the Individual Appeal. The PRRB did not consider any of these facts when it made its decisions. The record demonstrates that the PRRB's decisions do not articulate a rational connection between the facts found in the record and the choice it made to preclude RIH from proceeding on these issues.

Under 42 U.S.C. § 1395oo(e), the PRRB has the authority "to make rules and establish procedures, *not inconsistent with the provisions of this title or regulations of the Secretary*, which are necessary or appropriate to carry out the provisions of this section." (emphasis added). Thus, it is appropriate for the PRRB to impose deadlines on providers and to enforce those deadlines. See High County Home Health Inc. v. Thompson, 359

F.3d 1307 (10th Cir. 2004). The PRRB's exercise of this authority, however, cannot contravene other rules and regulations established by the PRRB (i.e., the PRRB instructions) and cannot be applied in such a way that ignores the actual filing of RIH's final position paper in the Individual Appeal.

RIH is not claiming that the PRRB erroneously dismissed the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G) in October 2003. See Inova Alexandria Hosp. v. Shalala, 244 F.3d 342, 348 (4th Cir. 2001) (finding that the Board is empowered to adopt rules that govern the dismissal of provider appeals, but that "[t]he Board's discretion is limited by the excusable neglect standard."). Rather, RIH contends, and the record shows, that the PRRB erroneously precluded RIH from pursuing the Eligible Days Issue in its Individual Appeal and the SSI Percentage Issue in either its Individual Appeal or in the Southwest Group Appeal.

## C. THE PRRB'S DECISIONS TO PRECLUDE RIH FROM HAVING A HEARING ON THE ELIGIBLE DAYS ISSUE AND THE SSI PERCENTAGE ISSUE ARE ENTIRELY INCONSISTENT WITH ITS DECISIONS IN OTHER ADMNISTRATIVE PROCEEDINGS INVOLVING RIH.

On September 20, 2006, the PRRB issued two decisions with respect to RIH's fiscal year 1997 and fiscal year 1998 appeals to the PRRB regarding the SSI Issue as it pertains to those fiscal years. The PRRB's decisions in those appeals demonstrate that the PRRB's decisions in the appeal currently before this Court are arbitrary and capricious.

RIH submitted individual appeal requests to the PRRB on May 21, 1999 (CN 99-3278) and February 1, 2001 (CN 01-1008) respectively. See September 20, 2006

Decisions attached hereto as Exhibit A. RIH added the Eligible Days Issue and the SSI Issue to these individual appeals on November 19, 1999 and December 28, 2001 respectively. RIH transferred the SSI Issue for 1997 and 1998 to a group appeal CN 00-0228G and CN 02-0426G respectively. Subsequently, RIH requested that the PRRB transfer the SSI Issue from the individual appeals (CN 99-3278 and CN 01-1008) to a new group appeal, CN 00-3019G. In October 2003, the PRRB closed CN 00-0228G and CN 02-0426G for failure to comply with the Board's due dates. On July 10, 2006, the Intermediary challenged the PRRB's jurisdiction over RIH's 1997 and 1998 appeals, in which the Intermediary argued that RIH should have either (a) requested the transfer of the SSI Issue from CN 00-228G and CN 02-0426G rather than the individual appeal or (b) RIH should have requested the transfer of the SSI Issue from CN 00-228G and CN 02-0426G to the individual appeal, CN 01-1008, and then requested to transfer the SSI Issue from the individual appeal to CN 00-3091G.

The PRRB ruled in favor of RIH finding that it had jurisdiction over RIH's 1997 and 1998 appeals. The PRRB found that RIH transferred the SSI Issue to CN 00-3091G before the PRRB closed the other two group appeals, CN 00-228G and CN 02-0426G. The PRRB also stated that "[a]lthough the Provider requested that the SSI issue be transferred from the individual appeal, its intent was clear." See Exhibit A.

Similarly, here RIH transferred the Eligible Days Issue and the SSI Issue from the DSH Calculation Group Appeal (PRRB Case No. 02-1868G) and the SSI Percentage Group Appeal (PRRB Case No. 02-1867G) to the Individual Appeal over a year before the PRRB dismissed those two group appeals. RIH also transferred the SSI Percentage Issue from its Individual Appeal (PRRB Case No. 02-0763) to the Southwest Group

Appeal (PRRB Case No. 00-3019G) almost a year before the PRRB dismissed the two group appeals. RIH's intent to transfer these issues was clearly set forth in the record. See AR at ____. There is no way to reconcile the PRRB dismissing the Eligible Days Issue and SSI Percentage Issue in the 1999 case, but allowing RIH to proceed in the 1997 and 1998 cases. In both cases RIH transferred the issues in question to its individual appeals before separate and distinct group appeals were dismissed for failure to meet PRRB-imposed deadlines regarding filing position papers. There is no rational basis for the PRRB to permit the issues to go forward in the 1997 and 1998 cases, but not the 1999 case.

## III. CONCLUSION

For the foregoing reasons, RIH respectfully requests that the Court grant its motion for summary judgment, remand this case to the PRRB, and order the defendants to permit a hearing on the Eligible Days Issue and the SSI Percentage Issue.

Respectfully submitted,

RHODE ISLAND HOSPITAL

By its counsel,

/s/ *Robert G. Flanders, Jr.*

Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (facsimile)
rflanders@haslaw.com
medwards@haslaw.com

Dated: April 2, 2007

**CERTIFICATION**

I hereby certify that on April 2, 2007 a copy of the foregoing Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Robert G. Flanders, Jr.